❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Device ("TARGET TELEPHONE"), currently in<br>law enforcement custody, as further described<br>in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No. 25-1830M(NJ)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____ December 8, 2025 _____ *(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*   ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:  11/24/2025 3:01 pm

*Judge's signature*

City and state:  Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.:<br>25-1830M(NJ) | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The properties to be searched are as follows:

- a touchscreen Motorola cell phone with a blue back (hereinafter "**TARGET TELEPHONE**"), seized on October 14, 2025 from 5841 N. 64th Street, Milwaukee, Wisconsin and believed to be used by Marlone MABRY Jr.

The **TARGET TELEPHONE** is currently located at North Central HIDTA, 11548 West Theo Trecker Way, Milwaukee, WI.

This warrant authorizes the forensic examination of the **TARGET TELEPHONE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the **TARGET TELEPHONE** described in Attachment A that relate to violation of Title 21, United States Code, §§ 841(a)(1) (distribution of and possession with intent to distribute controlled substances) 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and 843(b) (use of a communication facility in furtherance of drug trafficking) and involve Marlone MABRY Jr (XX/XX/XX88) and others since October 2024, including, but not limited to:

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording schedule or travel;

    e.  all bank records, checks, credit card bills, account information, and other financial records;

    f.  Photographs and/or videos depicting possession of drugs;

    g.  Any evidence related to either the ownership, purchase, or possession of drugs;

    h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    i.  All data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the **TARGET TELEPHONE**.

2.     Evidence of user attribution showing who used or owned the **TARGET TELEPHONE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Device ("TARGET TELEPHONE"), currently in law<br>enforcement custody, as further described in<br>Attachment A | )<br>)<br>)<br>)<br>)<br>) Case No.25-1830M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1); 846; & 843(b) | Distribution and conspiracy to possess with the intent to distribute controlled substances, and illegal use of a communications facility in furtherance of drug trafficking. |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

DORIAN WHITTENBERGER (Affiliate)
Digitally signed by DORIAN WHITTENBERGER (Affiliate)
Date: 2025.11.20 13:13:34 -06'00'

*Applicant's signature*

Dorian Whittenberger, DEA TFO

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ telephone _____ *(specify reliable electronic means).*

Date:11/24/2025

*Judge's signature*

City and state: Milwaukee, WI

Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Dorian L. Whittenberger, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property — an electronic device — which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Police Officer with the Milwaukee Police Department (MPD) and have been so employed since 2013. I am currently assigned to a Drug Enforcement Administration (DEA) Drug and Gang Task Force, Group 68, as a federally deputized Task Force Officer (TFO) at North Central High Intensity Drug Trafficking Areas (HIDTA) . My duties include the investigation of drug trafficking organizations and violations of federal narcotics and money laundering laws, including, but not limited to offenses defined by 21 U.S.C. §§ 841, 843, and 846, and 18 U.S.C. §§ 1956 and 1957. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, and Section 2516.

1

3.     I have received training in the area of narcotics investigations, money laundering, financial investigations, and various methods that drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of state and federal narcotics laws. I have participated or assisted in numerous federal and state search warrants for narcotic related offenses. I have experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

4.     I have aided and participated in investigations that have led to the issuance of numerous search warrants involving violations of both state and federal narcotic laws. These warrants involved the search of locations including: residences of targets, their associates, and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized therefrom, monetary instruments, and various assets that were purchased with the proceeds of the drug trafficking.

5.     Based upon my training and experience, I know that computer hardware and software may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits, or evidence of crime,

2

and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware and software that are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about crime.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other case agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Throughout this affidavit, reference will be made to case agents or officers. Case agents or officers are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your Affiant has had regular contact regarding this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

8. The property to be searched is as follows:

- a touchscreen Motorola cell phone with a blue back (hereinafter "**TARGET TELEPHONE**"), seized on October 14, 2025 from 5841 N. 64th Street, Milwaukee, Wisconsin, and believed to be used by Marlone MABRY Jr., a.k.a. "Red."

9. The **TARGET TELEPHONE** is currently located at the North Central High Intensity Drug Trafficking Areas (HIDTA) building located at 11548 West Theo Trecker Drive, West Allis, WI 53214.

10. The applied-for warrant would authorize the forensic examination of the **TARGET TELEPHONE** for the purpose of identifying electronically stored data particularly described in Attachment B.

**<u>PROBABLE CAUSE</u>**

11. Since at least August of 2025, the Drug Enforcement Administration (DEA) has been investigating multiple subjects for trafficking crystal methamphetamine and cocaine in the Milwaukee area. This investigation led to the arrest of one of these targets (herein "Confidential Source 1" or "CS 1") following various controlled buys from CS 1. CS 1 eventually agreed to cooperate with case agents to identify CS 1's drug supplier(s). In sum, as detailed below, CS 1 identified CS 1's crystal methamphetamine supplier as "Red" and provided the phone number for the **TARGET TELEPHONE**. CS 1 later identified a photograph of Marlone MABRY Jr. as "Red," the person who supplied CS 1 with methamphetamine over the course of approximately six months. The **TARGET TELEPHONE** was recovered during an unrelated residential search warrant where MABRY JR was located on scene and I believe that the **TARGET TELEPHONE** is a device MABRY JR uses for trafficking methamphetamine. Specifically, I am investigating MABRY JR for violations of Title 21, United States Code, §§ 841(a)(1) (distribution of and possession with intent to distribute controlled substances), 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and 843(b) (use of a communication facility in furtherance of drug trafficking)(TARGET OFFENSES).

12. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential source(s) and/or sources of

4

information; at least two controlled purchase of controlled substances, including cocaine and crystal methamphetamine; documentary evidence; telephone toll data; and physical surveillance.

13. Based on my training and experience, I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drugs is then field tested by the case agents for the presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. If applicable, all of the calls to the target by the informant are consensually recorded calls under the direction and control of case agents and made in the presence of case agents. Additionally, case agents observe the informant dial the target's number on each occasion and/or the contact is verified through telephone records. When communication between the informant is done via electronic means (such as use of Facebook Messenger), case agents review the electronic communications, verify the user/profile names involved, and maintain a copy of the communications as part of the case file. Unless otherwise noted, the controlled

5

buys and telephone contacts summarized below were conducted pursuant to the above procedures. Further, unless otherwise noted, all drug results are based on presumptive field testing and field weights with packaging.

**Confidential Source 1 (CS 1)**

14. I believe that confidential source 1 (CS 1) is credible because CS 1 has been extensively questioned by law enforcement officers as to other drug trafficking and the possession of weapons by prohibited individuals that has occurred and was occurring in the Milwaukee area; the information provided by CS 1 has been corroborated through other independent sources and found to be reliable and accurate. CS 1 has made statements to law enforcement against CS 1's penal interest. These statements include information relating to subject(s) who were sourced by CS 1, including names, telephones numbers, and locations. I know that much of the information provided by CS 1 was independently corroborated by law enforcement observations during surveillance and law enforcement databases as described in this affidavit. I am aware that CS 1 has a prior criminal history which includes felony convictions for Manufacture/Deliver Cocaine and Possession of Methamphetamine . CS 1 is currently cooperating with law enforcement in an effort to receive judicial/prosecutorial consideration in an unindicted federal drug investigation.

**Investigation**

15. TFO Whittenberger and SA Hepp spoke with CS 1 following CS 1's arrest related to drug-trafficking. CS 1 was the focus of TFO Whittenberger's initial investigation but, upon arrest, CS 1 agreed to further cooperate and admitted to CS 1's

role in drug trafficking. CS 1 admitted to selling crystal methamphetamine for money. During a subsequent debrief, CS 1 stated that a subject CS 1 knows as "Red," who CS 1 described as a black male, in his mid-40s, light skin, short hair cut, and tattoos, is CS 1's supplier for crystal methamphetamine. CS 1 stated that the phone number CS 1 would call to speak with "Red" is 414-750-8080. CS 1 stated CS 1 would contact this number and would meet "Red" near a blue, up and down-style duplex. TFO Whittenberger showed CS 1 a picture of 5841 / 5843 N. 64th Street (which is a blue duplex). CS 1 positively identified the residence as the residence where CS 1 would meet "Red." CS 1 stated CS 1 was not let inside the residence, but would meet "Red" at the front door or in the rear alley way behind the residence to pick up the crystal methamphetamine or to give money to "Red." CS 1 indicated that CS 1 has known "Red" for approximately 6-7 months and has purchased crystal methamphetamine from "Red" on several occasions during that timeframe.

16. CS 1 gave consent for a download and review of CS 1's cellular telephone that was seized at the time of CS 1's arrest. It should be noted that when CS 1 was opening the telephone, the contact "4ch" was open with the **TARGET TELEPHONE** number of 414-750-8080. TFO Whittenberger believes this is consistent with CS 1 attempting to contact this number at the time of CS 1's arrest.

17. During the course of the investigation, it was determined that the residence of 5841 / 5843 North 65th Street was under separate investigation by members of the Lake Winnebago Area Metropolitan Enforcement Group (LWAM) for selling fentanyl. The investigation consisted of multiple controlled buys, a State of Wisconsin issued warrant

7

for a pen/ping order for their target phone, and review of reports from law enforcement that they find true and reliable.

18. TFO Whittenberger and DCI SA Ryan Dobbs of LWAM shared information regarding the cases, which led to the decision to conduct a joint parallel investigation. LWAM eventually executed warrants at 5841 / 5843 North 65th Street on October 14, 2025.

### Search Warrant at 5841 / 5843 N. 65th St

19. Investigator Andrew Knurowski of LWAM drafted a State of Wisconsin search warrant for 5841 / 5843 N. 64th Street. The warrant was reviewed and signed by the Circuit Court Judge Honorable Scott Woldt on October 13, 2025 and executed on October 14, 2025.

20. TFO Whittenberger knows that during this execution, the target of the LWAM investigation was able to evade arrest by fleeing in a vehicle parked directly in front 5841 / 5843 N. 65th St. The search warrant execution continued into the location of 5841 / 5843 N. 65th St. During the execution, four other subjects were located at the residence, including inside and outside of the location, including Marlone MABRY Jr. (XX/XX/XX88), a.k.a. "Red."

21. TFO Whittenberger was on scene for the search of this residence. During the search, TFO Whittenberger called the target phone number for "Red" at 414-750-8080. While in the northwest bedroom of 5841 N. 65th Street, TFO Whittenberger observed the **TARGET TELEPHONE** (a touchscreen Motorola cell phone with a blue back) on the floor next to the bed start ringing. TFO Whittenberger went to the subjects who were located

8

in the residence at the time of the warrant and no person claimed the **TARGET TELEPHONE**.

22.    TFO Whittenberger knows that drug dealers will attempt to distance themselves from items that are illegal or could contain illegal item(s) or intelligence like cellular telephones. This is done to have cover from these illegal acts and not have association to a telephone communicating about illegal drug sales or firearms.

23.    In the same room as the **TARGET TELEPHONE,** TFO Whittenberger observed personal property, for Marlone MABRY JR, identified as Marlone MABRY JR (DOB XX/XX/XX88), including medication with MABRY JR's personal information on it. Also located in 5841 N. 65th Street, in the living room area, was Wisconsin Identification cards with MABRY JR's personal information.

24.    TFO Whittenberger knows that at the time of execution, MABRY JR was located in 5841 N. 65th Street, in the northwest bedroom, which is where the **TARGET TELEPHONE** was recovered.

25.    TFO Whittenberger knows that during the search of the 5841 N. 65th Street, multiple blenders with white residue were recovered from the kitchen area. Also in the kitchen area was a drawer that contained multiple sandwich baggies and digital scales with white residue. Based on my training and experience, I know that blenders are used to mix controlled substances with other substances, such as cutting agents, that scales are used to weigh drugs and baggies are used to package drugs for resale.

26.     TFO Whittenberger knows that during the search of 5843 N. 65th Street, LWAM located approximately 116.85g of positively field tested fentanyl and 78.39g of positively field tested methamphetamine.

27.     TFO Whittenberger seized the **TARGET TELEPHONE** and it was transported to North Central HIDTA for further investigation.

28.     TFO Whittenberger showed CS 1 a Department of Transportation (DOT) photograph of MABRY JR. CS 1 positively identified MABRY JR as "Red," the person from whom CS 1 has purchased crystal methamphetamine multiple times over the last 6 to 7 months.

<u>Review of Pen/Ping Data</u>

29.     TFO Whittenberger further reviewed pen/ping data as it relates to CS 1 in contact with 414-750-8080 (the phone number I believe to be associated with the **TARGET TELEPHONE**). TFO Whittenberger observed that CS 1 had incoming/outgoing contact calls with 414-750-8080 (the phone number I believe to be associated with the **TARGET TELEPHONE**) approximately 439 times between June 1, 2025 and October 14, 2025. I believe this corroborates CS 1's statements concerning CS 1's relationship with "Red" given the volume of their communications.

30.     TFO Whittenberger further examined CS 1's pen register/trap and trace and ping data for dates and times around relevant law enforcement operations.

31.     For example, using a separate CS, case agents conducted at least one controlled buy of methamphetamine from CS 1 (one in September 2025) prior to CS 1 agreeing to cooperate with law enforcement. On the day of the September buy, I observed

10

that, CS 1's device was in contact with 414-750-8080 (the phone number I believe to be associated with the **TARGET TELEPHONE**) approximately 8 times. CS 1's device was contacting 414-750-8080 (the phone number I believe to be associated with the **TARGET TELEPHONE**) during the approximate time of the buy. Based on my training and experience, I believe this is consistent with CS 1 contacting CS 1's supplier before and during the sale of methamphetamine. I am also aware of other contacts between CS 1 and a separate CS, during which they discussed drug purchases and CS 1 had contact with 414-750-8080 (the phone number I believe to be associated with the **TARGET TELEPHONE**) on those days.

32.     I believe that evidence of MABRY JR's drug trafficking will be found within the **TARGET TELEPHONE**. For example, based on my training and experience, I believe evidence such as communications with CS 1, communications with MABRY JR's own supplier(s), and photographs and videos of drugs or drug proceeds, will be found on the device. CS 1 reported buying drugs from MABRY JR for approximately 6 to 7 months ( approximately March or April 2025). I am requesting authorization to search the **TARGET TELEPHONE** for one year prior to the seizure of the device (October 2024) because I believe that timeframe will be sufficient to identify the scope of MABRY JR's drug trafficking with CS 1 but also to identify/establish the scope of his relationship with other drug customers, co-conspirators, and sources of supply.

33.     The **TARGET TELEPHONE** is currently in storage at North Central HIDTA, 11548 West Theo Trecker Dr, West Allis, WI. In my training and experience, I believe the **TARGET TELEPHONE** has been stored in a manner in which its contents

11

are, to the extent material to this investigation, in substantially the same state as it was when the **TARGET TELEPHONE** first came into the possession of case agents.

34.     As a result of my training and experience, I know that drug dealers and criminals use cellular phones to conduct their business and plan crimes. I am also aware that cellular telephones provide narcotics traffickers and criminals with mobile access and control over their illegal trade. They often use cellular telephones to communicate with one another in furtherance of their activities. I am also aware that drug dealers and criminals use multiple cellular telephones to try and thwart law enforcement from uncovering their illegal activity. I am also aware that individuals engaged in illegal activities take pictures using their cellular phones of themselves with narcotics and firearms. I know cell phones frequently retain information for long periods of time, including retaining call histories, text messages, voicemail messages, photographs, internet history, GPS location, and other information that can be retrieved from the cell phone even long after the cell phone ceased to be used. I also know that data can be transferred to and from other cellular phone devices.

35.     Based on my training and experience, I believe that there is probable cause to believe that CS 1 had direct contact with "Red" (believed to be MABRY JR) for the purpose of drug trafficking and that CS 1 communicated with MABRY JR via the **TARGET TELEPHONE** regarding the trafficking of crystal methamphetamine**.** I also believe that the **TARGET TELEPHONE** is likely to contain evidence of MABRY JR's drug trafficking activities and possible source(s) of supply for the crystal methamphetamine that MABRY JR was previously supplying to CS 1.

## TECHNICAL TERMS

36.     Based on my training and experience, I use the following technical terms to

convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

13

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments, or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Tablet:  A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen.  Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions.  Apps can, for example, permit accessing the Web, sending, and receiving e-mail, and participating in Internet social networks.

g.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods

14

(e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

37. Based on my training, experience, and research, I know that the **TARGET TELEPHONE** have capabilities that allow it to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

38. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

39. There is probable cause to believe that things that were once stored on the **TARGET TELEPHONE** may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because

15

when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

40. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET TELEPHONE** was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET TELEPHONE** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems

16

can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

41. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET TELEPHONE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not

17

involve physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION AND DELAYED NOTICE REQUEST

43. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET TELEPHONE** described in Attachment A to seek the items described in Attachment B.

44. This is part of an ongoing investigation into a multi-state DTO distributing fentanyl, cocaine, methamphetamine, and other controlled substances in the southeast Wisconsin area. This investigation hopes to identify all of the local members, any out of state members, any out of country members, and the sources of supply of the controlled substances being brought into southeast Wisconsin. The investigation will continue until all appropriate law-enforcement investigative methods have been exhausted.

45. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of the **TARGET TELEPHONE** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). There is

18

reasonable necessity for the use of the technique described above, for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

## ATTACHMENT A

The properties to be searched are as follows:

- a touchscreen Motorola cell phone with a blue back (hereinafter "**TARGET TELEPHONE**"), seized on October 14, 2025 from 5841 N. 64th Street, Milwaukee, Wisconsin and believed to be used by Marlone MABRY Jr.

The **TARGET TELEPHONE** is currently located at North Central HIDTA, 11548 West Theo Trecker Way, Milwaukee, WI.

This warrant authorizes the forensic examination of the **TARGET TELEPHONE** for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.      All records on the **TARGET TELEPHONE** described in Attachment A that relate to violation of Title 21, United States Code, §§ 841(a)(1) (distribution of and possession with intent to distribute controlled substances) 846 (conspiracy to distribute and possess with intent to distribute controlled substances), and 843(b) (use of a communication facility in furtherance of drug trafficking) and involve Marlone MABRY Jr (XX/XX/XX88) and others since October 2024, including, but not limited to:

    a.   lists of customers and related identifying information;

    b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.   any information related to co-conspirators and sources of drugs and firearms (including names, addresses, phone numbers, or any other identifying information);

    d.   any information recording schedule or travel;

    e.   all bank records, checks, credit card bills, account information, and other financial records;

    f.   Photographs and/or videos depicting possession of drugs;

    g.   Any evidence related to either the ownership, purchase, or possession of drugs;

    h.   Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

    i.   All data, communications, information, and records, in whatever form, that have any tendency to establish the actual or intended physical location of its user, or that of any of their associates involved in criminal activity, as well as the physical location of the **TARGET TELEPHONE**.

1

2. Evidence of user attribution showing who used or owned the **TARGET TELEPHONE** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2